**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------
RYAN O'DELL,                                   :
                                               :
                Plaintiff,                     :   Civil Action No. 1:21-cv-7635
                                               :
v.                                             :
                                               :   **COMPLAINT FOR VIOLATIONS OF**
LANDMARK INFRASTRUCTURE LP,                    :   **SECTIONS 14(a) AND 20(a) OF THE**
ARTHUR P. BRAZY, JR., STEVEN M.                :   **SECURITIES EXCHANGE ACT OF**
SONNENSTEIN, SADIQ MALIK, THOMAS               :   **1934**
CAREY WHITE III, GERALD TYWONIUK,              :
and KEITH BENSON,                              :   **JURY TRIAL DEMANDED**
                                               :
                Defendants.                    :
--------------------------------------------------------   :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Landmark, Inc. ("Landmark or the

"Company") and the members Landmark board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with

the proposed acquisition of Landmark by Landmark Dividend LLC, the sponsor of Landmark

Infrastructure Partners GP LLC (the "Partnership"), the General Partner of Landmark ("Landmark

Dividend") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 10, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company unitholders.  The Proxy Statement recommends that Company unitholders vote in favor of a proposed transaction whereby LM Infra Acquisition Company LC ("LM Infra") will acquire all of the assets of the Partnership through the following series of transactions: (a) LM DV Infrastructure, LLC will acquire subsidiaries of Landmark Infrastructure Inc. ("REIT Subsidiary") and Landmark Infrastructure   REIT   LLC ("REIT LLC") (the "Equity Sale"), (b) REIT LLC will then merge with and into REIT Subsidiary, with REIT Subsidiary surviving the merger (the "First REIT Merger"), (c) REIT Subsidiary will then merge with and into the Partnership, with the Partnership surviving the merger (the "Second REIT Merger"), (d) Digital LD MergerCo II LLC ("Merger Sub II") will then merge with and into the Partnership (the "First Partnership Merger"), with the Partnership surviving the First Partnership Merger and (e) the Partnership will then merge with and into Digital LD MergerCo LLC ("Merger Sub") (the "Second Partnership Merger" and, together with the Equity Sales, the First REIT Merger, Second REIT Merger and the First Partnership Merger, the "Proposed Transaction"), with Merger Sub surviving the Second Partnership Merger. As a result of the Transactions, the Common Units of the Company will be delisted from the NASDAQ Global Market.

3.     As discussed below, Defendants have asked Landmark unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Evercore Group L.L.C. ("Evercore") in support of its fairness

opinion, and relied upon by the Conflicts Committee[1] of the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Landmark unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

---

[1] The Conflicts Committee, consisted of purportedly independent members of the Board, was established by written consent of the entire Board, was delegated authority to, among other things, review, consider and evaluate the proposal from Landmark Dividend.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Landmark common units and has held such units since prior to the wrongs complained of herein.

10.     Individual Defendant Arthur P. Brazy, Jr. ("Brazy") is the Chief Executive Officer ("CEO") and a member of the Board of the Partnership. Brazy is also the CEO of Landmark Dividend.

11.     Individual Defendant Steven M. Sonnenstein is a member of the Board of the Partnership and is affiliated with Landmark Dividend.

12.     Individual Defendant Sadiq Malik is a member of the Board of the Partnership and is affiliated with Landmark Dividend.

13.     Individual Defendant Thomas Carey White III is a member of the Board of the Partnership.

14.     Individual Defendant Gerald Tywoniuk is a member of the Board of the Partnership.

15.     Individual Defendant Keith Benson is a member of the Board of the Partnership.

16.     Defendant Landmark is a Delaware limited partnership and maintains its principal offices at 400 Continental Blvd., Suite 500, El Segundo, CA 90245.  The Company's common units trades on the NASDAQ Stock Exchange under the symbol "LMRK."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

19.    Landmark Infrastructure acquires, owns, develops, and manages a portfolio of real property interests and infrastructure assets in the United States. The Company leases its real property interests and infrastructure assets to companies operating in the wireless communication, digital infrastructure, outdoor advertising, and renewable power generation industries. Its real property interests primarily include long-term and perpetual easements, tenant lease assignments, fee simple properties, and infrastructure assets. The Company also owns various interests in receivables associated with related assets. Landmark Infrastructure Partners GP LLC serves as the general partner of the company. Landmark Infrastructure was incorporated in 2014 and is based in El Segundo, California.

20.    On August 23, 2021, Landmark announced that it had entered into the Proposed Transaction:

> EL SEGUNDO, Calif., Aug. 23, 2021 (GLOBE NEWSWIRE) - - Landmark Infrastructure Partners LP ("Landmark," or the "Partnership") (NASDAQ: LMRK) today announced that, following lengthy negotiations between the Conflicts Committee of the Board of Directors of Landmark Infrastructure Partners GP LLC (the "General Partner" or "GP") (the "Conflicts Committee") and the Partnership's sponsor, Landmark Dividend LLC ("LD"), the Partnership and LD have entered into a definitive agreement under which the Partnership will be acquired by LD.
>
> Under the terms of the agreement, Landmark public unitholders will receive $16.50 in cash for each common unit owned, representing a premium of 38% to the Partnership's unaffected unit price on May 14, 2021, the last business day prior to the announcement of LD's proposed acquisition of Landmark for $13.00 per common unit. The agreement between Landmark and LD reflects one of the highest premiums ever paid in a transaction where a GP purchases its MLP.
>
> LD owns, among other things, 100% of the membership interests in the General Partner and 13.2% of the common units representing

limited partner interests in the Partnership. After consultation with its independent legal and financial advisors, and consistent with the recommendation of the Conflicts Committee that is composed entirely of independent directors of the GP, the agreement was reviewed and unanimously approved by the full Board of Directors of the GP. Both the Conflicts Committee and the full Board of Directors of the GP determined the transaction with LD to be in the best interests of the Partnership.

LD is only considering the acquisition of Landmark or, if the proposed transaction is not consummated as expected, LD will continue operating Landmark in its role as the GP. LD is not considering third party offers for Landmark or its assets. LD's acquisition of Landmark is fully financed and fully diligenced, and takes into account the value inherent in LD's GP ownership interest and incentive distribution rights ("IDRs"). LD is interested in acquiring all of Landmark's assets, as evidenced by its agreement to purchase the entire Partnership rather than select assets. This transaction offers certainty as well as compelling and immediate value for unitholders, particularly given that Landmark's cash flow will be adversely impacted by the expiration of the cap on Landmark's agreement to reimburse LD for a portion of its expenses for general and administrative services on November 19, 2021. In addition, the GP intends to exercise its contractual right to be reimbursed for costs and expenses it incurs for services provided to Landmark.

The transaction is expected to close in 2021, subject to customary closing conditions and approval by the holders of a majority of Landmark's outstanding common units.

TAP Securities LLC and RBC Capital Markets are acting as financial advisors and Simpson Thacher & Bartlett LLP and Latham & Watkins, LLP are acting as legal advisors to LD. Truist Securities Inc. is acting as left lead arranger and joint bookrunner, and Citizens Bank N.A., RBC Capital Markets and TD Securities (USA) LLC are acting as joint lead arrangers and joint bookrunners for the debt financing. Evercore is acting as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal advisor to the Conflicts Committee.

* * *

21.     The Conflicts Committee of the Board has unanimously approved the Proposed

Transaction. It is therefore imperative that Landmark's unitholders are provided with the material

information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

22.     On September 10, 2021, Landmark filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Landmark Financial Projections*

23.     The Proxy Statement fails to provide material information concerning financial projections by Landmark management and relied upon by Evercore in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Landmark management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own

estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, Adjusted EBITDA, and Distributable Cash Flow (AFFO), but fails to provide line items used to calculate these metrics ***and/or*** a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[2]

27.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analysis*

28.     With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 6.5% to 7.5%; (iv) the Company's weighted average cost of capital; and (v) the inputs and assumptions underlying the range of EBITDA exit multiples of 13.0x to 17.0x.

29.     With respect to Evercore's *Discounted Distribution Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of terminal yield range of 6.0% to 7.5%; (ii) the inputs and assumptions underlying the cost of equity of 12.5% to 14.5% based on CAPM; and (iii) the inputs and assumptions underlying the cost of equity of 10.5% to 12.5% based on expected market total return.

30.     With respect to Evercore's *Precedent M&A Transaction Analysis* for the Company, the Proxy Statement fails to disclose: (i) the metrics and multiples of the transactions in the analysis; (ii) the inputs and assumptions underlying the 7.0% discount rate used; and (iii) the present value of growth capital expenditures between September 30, 2021 and December 31, 2021.

---

[2] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     With respect to Evercore's *Peer Group Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis.

32.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums paid for each transaction.

33.     With respect to the sales process, the Proxy Statement fails to disclose: (i) the identity of the members of the Conflicts Committee; (ii) the reason Landmark Dividend did not want to evaluate third party offers, including Melody Investment Advisors' offers; (iii) the reason why the Partnership rejected the Conflicts Committee's request that the Partnership request for valuation materials and other information from Melody Investment Advisors.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which,

at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Evercore and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of

the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Landmark within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Landmark, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Landmark, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

12

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Landmark, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.


Dated: September 13, 2021                   **MELWANI & CHAN LLP**

                                            By:  /s *Gloria Kui Melwani*
                                            _____
                                            Gloria Kui Melwani (GM5661)
                                            1180 Avenue of Americas, 8th Fl.
                                            New York, NY 10036
                                            Telephone: (212) 382-4620
                                            Email: gloria@melwanichan.com

                                            *Attorneys for Plaintiff*

14